**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No.  02-RB-2390  (CBS) (consolidated with 03-RB-2495 (CBS))

LISA SIMPSON, and
ANNE GILMORE,

    Plaintiffs,

v.

UNIVERSITY OF COLORADO, Boulder, through its Board,
THE REGENTS OF THE UNIVERSITY OF COLORADO, a body corporate,

    Defendants.

---

**ORDER CONCERNING PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT**

**Blackburn, J**

    This matter is before me on the following motions: 1) **Plaintiffs' Motion to Alter or Amend Judgment or for Relief from Judgment** [#687 (redacted) & #688 (sealed)], filed April 14, 2005, (Motion to Alter or Amend); 2) **Defendant's Motion for Review of Bill of Costs Award** [#743], filed June 6, 2005; and 3) **Plaintiffs' Motion to Stay Determination of the Plaintiffs' Motion to Amend or Alter Judgment or for Relief From Judgment Until After Defendant's Compliance with the July 1, 2005 Memorandum Order Regarding Plaintiffs' Joint Motion for Sanctions and Plaintiffs' Joint Motion to Compel** [#760], filed July 6, 2005.  I deny the motions.

    The defendant filed a response to the Motion to Alter or Amend [#712], on May 4, 2005.  The Motion to Alter or Amend concerns my March 31, 2005, order [#669] granting the defendants' motion for summary judgment (Summary Judgment Order).  In

their Motion to Alter or Amend, the plaintiffs ask that I vacate the Summary Judgment Order, and deny the defendant's motion for summary judgment. After the plaintiffs' Motion to Alter or Amend was filed, the defendant produced some additional evidence after motions to compel the production of certain evidence were granted. Specifically, on July 1, 2005, Magistrate Judge Shaffer ordered the defendant to produce records of the University of Colorado's Office of Sexual Harassment which document or describe sexual conduct involving a witness referred to as Student-Trainer B and football players or recruits. *Order* [#758], filed July 1, 2005. On September 21, 2005, Magistrate Judge Shaffer ordered CU to produce, *inter alia*, police interviews of witnesses referred to as Trainer B and Trainer C. *Courtroom minutes* [#837], filed September 21, 2005. After Magistrate Judge Shaffer entered his July 1, 2005, order requiring CU to produce certain evidence, the plaintiffs filed their motion to stay determination of their Motion to Alter or Amend pending production of this evidence. I deferred resolution of the Motion to Alter or Amend pending the production and analysis of the additional evidence that Magistrate Judge Shaffer ordered produced.

After the production of this evidence, the plaintiffs filed two supplements to their Motion to Alter or Amend. The first supplement [#805 (redacted) & #806 (sealed)], was filed August 9, 2005 (First Supplement). The second supplement [#865 (sealed) & #916 (redacted)], was filed October 6, 2005 (Second Supplement). Each of these filings has generated responses by the defendant, and the plaintiffs have filed replies. Briefing and the submission of evidence in support of the Motion to Alter or Amend was completed on November 7, 2005, when the plaintiffs filed their reply [#893 (sealed)] in support of their Second Supplement.

In resolving the plaintiffs' Motion to Alter or Amend, I have considered carefully each of these filings, including the exhibits submitted by the parties,. Portions of the parties' arguments, and much of the evidence, was filed under seal in an effort to protect the identities and the privacy of certain witnesses. In an effort to continue that protection, I address some of the evidence in a summary fashion in this order. My consideration of the evidence, however, has not been summary.

On June 27, 2005, the plaintiffs filed a response [#749] to the Motion for Review of Bill of Costs Award, and the defendant filed a reply [#765], filed July 13, 2005. In resolving the Defendant's Motion for Review of Bill of Costs Award, I have considered the motion, the response, and the reply.

## I. STANDARD OF REVIEW

The plaintiffs seek amendment of the judgment or relief from judgment under FED. R. CIV. P. 59(e) and 60(b). They argue that they are entitled to such relief based on four grounds. First, the plaintiffs cite the availability of new evidence. Under FED. R. CIV. P. 59(e) and 60(b)(2), a party may move for relief from judgment based on newly discovered evidence which, with due diligence, could not have been discovered in time to forestall the entry of the judgment being challenged. Second, the plaintiffs argue that amendment is necessary to correct clear error in my March 31, 2005, order. Third, they seek amendment of the judgment to prevent a manifestly unjust award of costs. *Motion to Alter or Amend*, p. 1. I address the plaintiffs' challenge to the award of costs in the context of the Defendant's Motion for Review of Bill of Costs Award. Finally, the plaintiffs seek amendment of my order based on the defendant, University of Colorado's (CU's), misconduct in discovery proceedings in this case. *First Supplement*,

3

p. 2. Relief from judgment may be granted based on the misconduct of an adverse party. FED. R. CIV. P. 60(b)(3).

Rule 59(e) motions "should be granted only to correct manifest errors of law or to present newly discovered evidence." **Adams v. Reliance Standard Life Ins. Co.**, 225 F.3d 1179, 1186, n.5 (10th Cir. 2000) (internal quotation and citation omitted). When seeking relief under Rule 59(e) based on new evidence, the party seeking relief must show that the new evidence is material and has a "probable capacity" to change the result. **Castaldo v. Stone**, 191 F. Supp. 2d 1196, 1197 (D. Colo. 2002). The moving party also must show that the new evidence is newly discovered and "if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence." **Committee for the First Amendment v. Campbell**, 962 F.2d 1517, 1523 (10th Cir. 1992) (internal quotation and citation omitted).

Similarly, relief "under rule 60(b) is extraordinary and may only be granted in exceptional circumstances." **Bud Brooks Trucking, Inc. v. Bill Hodges Trucing Co.**, 909 F.2d 1437, 1440 (10th Cir. 1990) (citations omitted). When offering new evidence as a basis for relief under Rule 60(b)(2), the party seeking relief must show that the new evidence likely would alter the outcome. **Aldrich Entr., Inc. v. U.S.**, 938 F.2d 1134, 1143 (10th Cir. 1991). If the new evidence could have been discovered earlier with due diligence, the motion for reconsideration should be denied. **Berry v. Stevinson Chevrolet**, 828 F. Supp. 827, 829 (D. Colo. 1993). Relief from judgment may be granted under Rule 60(b)(3) when a party demonstrates with clear and convincing evidence that the opposing party took actions with "an intent to deceive or

4

defraud the court by means of a deliberately planned and carefully executed scheme."
*Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999) (citations omitted).

In my Summary Judgment Order, I concluded that the plaintiffs had not demonstrated the existence of a disputed issue of material fact concerning two elements of their Title IX claim. Further I concluded that, under the applicable Title IX law, no reasonable finder of fact could find for the plaintiffs based on the evidence in the record. In this context, the plaintiffs are entitled to relief from judgment under Rule 59(e) or 60(b)(2) only if they show either a manifest error of law, or that properly submitted newly discovered evidence demonstrates the existence of a genuine issue of material fact.

In analyzing the plaintiffs' motion, it is important to recall the scope of the risk that defines the plaintiffs' Title IX claim. In my Summary Judgment Order, I concluded that

> the relevant risk in this case is the particular risk cited by the plaintiffs: the risk that football players and recruits would sexually assault female University students as part of the recruiting program, including the risk that those assaults would be aided or exacerbated by excessive alcohol use by players, recruits, and female students.

*Summary Judgment Order*, p. 12.

## II. NEW EVIDENCE

It is important to understand the evidence that the plaintiffs claim is newly discovered, or which I may have failed to consider before entering summary judgment in favor of the defendants. I summarize the nature of this evidence below. I conclude that the evidence cited by the plaintiffs in their Motion to Alter or Amend and their

5

supplements to that motion does not support their arguments for relief from judgment or amendment of the judgment.

### A.  Trainer B

On March 11, 2005, twenty days before the entry of the Summary Judgment Order, the plaintiffs filed a supplemental response and brief in opposition to CU's motion for summary judgment.  In that supplemental response, the plaintiffs cite the affidavit of a witness who is referred to as Student Trainer B.  Trainer B says she was subjected to severe sexual harassment, including sexual assault, at a party attended by CU football players and recruits on November 23, 2001.  Some of the CU football players identified by Trainer B as having participated in her harassment and sexual assault on November 23, 2001, also are alleged to have participated in the harassment and sexual assault of the plaintiffs two weeks later, on December 7, 2001.  Trainer B's affidavit does not indicate that she notified any CU officials of these events prior to February, 2004.

Also attached to the plaintiffs' March 11, 2005, supplemental response is the affidavit of a student who says she worked as an assistant trainer in the CU football program in the Fall of 2001.  This witness reports that toward the end of 2001, rumors began to circulate in the CU athletic center that something bad happened to Trainer B involving football players and sex.  This witness says she never learned the details of what happened.  This witness says that another assistant trainer spoke to Trainer B about these rumors, and that the head trainer removed Trainer B from the student trainer program in December, 2001.  Trainer B later re-joined the program.

Although I considered this evidence prior to issuing my Summary Judgment Order, I did not specifically reference this evidence in my Summary Judgment Order. Notably, the evidence submitted with the plaintiffs' March 11, 2005, supplemental response does not provide any factual basis to conclude that a relevant CU official knew that Trainer B had been sexually harassed and assaulted on November 23, 2001, by CU football players and recruits. Evidence that rumors were circulating about Trainer B's sexual activities is not sufficient to demonstrate that relevant CU officials were on notice of the Title IX risk defined in my Summary Judgment Order.

In their supplements to their Motion to Alter or Amend, the plaintiffs also cite evidence produced in response to Magistrate Judge Shaffer's July 1 and September 21, 2005, orders. Much of this evidence is tied to Trainer B. These documents include records of CU's Office of Sexual Harassment and police interviews of certain witnesses. The plaintiffs argue that these documents provide additional details of the sexual harassment and assault of Trainer B on November 23, 2001, and knowledge of this incident by CU football coaching staff.

I have reviewed the exhibits attached to the plaintiffs First Supplement and Second Supplement. These documents do provide additional details of the harassment and sexual assault of Trainer B on November 23, 2001. They also indicate that rumors about Trainer B's sexual activities with CU football players may have circulated among players, trainers, and some of the coaching staff in the Fall of 2001. However, none of the evidence indicates that, prior to December 7, 2001, coaching staff was aware of any credible information that Trainer B had been sexually harassed or assaulted on November 23, 2001. Notably, the newly submitted evidence includes a statement by

7

Trainer B in which she says she did not tell anyone about the November 23, 2001, incident for at least two months after it occurred, and the person she then told was a friend, not a CU official.

Specifically, I conclude that the evidence submitted by the plaintiffs does not support the conclusion that Steve Willard, Director of Sports Medicine, was aware of such information prior to December 7, 2001. There is evidence that rumors about Trainer B's sexual activities with football players were circulating in the athletic department in November, 2001, and that Willard was aware of these rumors. However, the evidence cited by the plaintiffs does not support the conclusion that Willard knew or must have known about the sexual harassment and assault of Trainer B on November 23, 2001.

The plaintiffs argue also that if Willard knew of Trainer B's harassment, then Barnett also must have known. This argument is based on the affidavit of Earl "Doc" Kreis, who was employed as Assistant Athletic Director and Head Speed and Strength Coach at CU from 1993 to 2003. *First Supplement*, Exhibit B. Kreis reports that Willard was Barnett's eyes and ears in the training room, and that if Willard heard about issues relating to CU football players, Willard promptly reported those issues to Barnett. *Id.* Absent evidence that Willard was aware of the November 23, 2001, incident involving Trainer B, the assumption that Willard reported all to Barnett does not support the conclusion that Barnett was aware of the November 23, 2001, incident.

Absent evidence that a relevant CU official was aware of the harassment and assault of Trainer B on November 23, 2001, the evidence submitted by the plaintiffs

8

does not create a genuine issue of material fact concerning CU's knowledge of the risk relevant to the plaintiffs' Title IX claim.

### B.  Trainer C

In her affidavit, Trainer C says she was a student trainer associated with the CU football program during the relevant time.  She says that student trainers routinely were sexually harassed, at a minimum verbally, by football players, and that coaching staff did nothing to stop this harassment.  She also describes an incident in which she was sexually assaulted by a CU football player sometime prior to December 7, 2001.  She states that she did not report this incident to her supervisor in the football program because she thought she might lose her job, but the player would not be punished.  She says also that she did not report the incident to police until January or February, 2004.

Assuming this affidavit properly may be considered as new evidence in support of the Motion to Alter or Amend, I conclude that this evidence does not demonstrate the existence of a disputed issue of material fact relevant to the plaintiffs' Title IX claim. Most notably, this evidence does not indicate that relevant CU officials were on notice of a risk relevant to the plaintiffs' Title IX claim.

### C.  October, 2001 Sexual Assault

In my Summary Judgment Order, I discussed evidence that a sexual assault perpetrated by a CU football player in October, 2001, was reported to Barnett by the victim, who was a student trainer working with the football team.  I concluded that this incident, by itself, cannot be seen as putting CU on notice of a risk that football players

and recruits would sexually assault female University students as part of the football recruiting program.  *Summary Judgment Order*, p. 19.

The plaintiffs note that on March 11, 2005, they deposed a new witness who is familiar with the October, 2001, sexual assault.  This new evidence, the plaintiffs appear to argue, justifies the amendment or withdrawal of my Summary Judgment Order.  Assuming this evidence properly may be considered as new evidence, I conclude that it does not create any dispute about a fact material to the plaintiffs' Title IX claim.  This evidence does not support the plaintiffs' Motion to Alter or Amend.

### D.  Hnida Affidavit

In my March 31, 2005, order, I outlined reports of sexual harassment of Katharine Hnida, the only female player on the CU football team in 2000.  I outlined the content of the affidavit of Hnida's father, Dr. David Hnida, which was included in the plaintiffs' response to the motion for summary judgment.  Dr. Hnida reported that he had contacted Barnett and Tharp about "multiple instances of sexual harassment of his daughter by CU football players, which the coaching staff had allowed to continue." *Simpson response* [#282], filed June 30, 2004, Exhibit 11.  Dr. Hnida did not specify in his affidavit "the type of sexual harassment that was addressed in these contacts with Barnett and Tharp."  March 31, 2005, order, p. 17.  After reading reports of the assaults involving the plaintiffs on December 7, 2001, Dr. Hnida said he informed Chancellor Byyny that Katharine Hnida had been physically, sexually, and verbally assaulted by members of the CU football team.  *Id*.  I concluded that "the unique context in which Ms. Hnida was sexually harassed, and the belated disclosure by Dr. Hnida of the physical and sexual assault of Hnida by football players, effectively

10

extenuates, if not eliminates altogether, the efficacy of any notice to CU that female students were at risk of sexual assault by players and recruits involved in the recruiting program." *Id.*, p. 18.

Attached to the plaintiffs' Motion to Alter or Amend is a second affidavit of Dr. Hnida, executed on April 11, 2005, eleven days after my Summary Judgment Order was issued. In contrast to his original affidavit, Dr. Hnida says in his April 11, 2005, affidavit that he met with Barnett and Tharp in 2000 and reported that Hnida had been threatened, groped, and subjected to obscene and derogatory names. *Motion to Alter or Amend*, Exhibit I, p. 2.

Dr. Hnida's April 11, 2005, is simply a refinement of his previous affidavit, apparently tailored to address the analysis stated in my Summary Judgment Order. The new statements in this affidavit were available to the plaintiffs previously, but they were not submitted in response to CU's motion for summary judgment. Thus, I conclude that these new statements cannot properly be used as new evidence to support the plaintiffs' Motion to Alter or Amend. Even if it were proper to consider Dr. Hnida's new statements in support of the motion, I conclude that they would not alter the analysis and outcome reflected in my Summary Judgment Order. Assuming Dr. Hnida reported physical sexual harassment of Katharine Hnida to relevant CU officials prior to December 7, 2001, such a report would not create notice of the relevant risk when such notice did not exist without this specific report from Dr. Hnida. *Summary Judgment Order*, p. 18.

E.  Conclusion

Even if all of the evidence newly submitted by the plaintiffs properly may be considered as new evidence under the standards applicable under Rules 59(e) and 60(b), I conclude that this evidence does not support the plaintiffs' Motion to Alter or Amend.  Viewed in the light most favorable to the plaintiffs, this evidence does not demonstrate the existence of a disputed issue of material fact relevant to the plaintiffs' Title IX claim.  Most notably, this evidence does not indicate that relevant CU officials were on notice of a risk relevant to the plaintiffs' Title IX claim.

### III.  CLEAR ERROR

The plaintiffs argue that my Summary Judgment Order contains clear error regarding evidence of actual knowledge and deliberate indifference to a risk relevant to the plaintiffs' Title IX claim.  *Motion to Alter or Amend*, pp. 5-6.   First, they argue that I have defined the risk relevant to the plaintiffs' Title IX claim too narrowly.  Based on the law discussed in my Summary Judgment Order, I conclude that I defined the relevant Title IX risk consistent with applicable law.

Second, the plaintiffs argue that even if the relevant risk is defined properly in the Summary Judgment Order, it was clear error to conclude that the February 18, 1998, meeting between CU officials and officials of the Boulder County District Attorney's office did not provide notice of the relevant risk for the purpose of Title IX.  In my Summary Judgment order, I concluded that this meeting, and the incident that precipitated the meeting, "did not, *per se*, provide notice of the broader risk alleged by the plaintiffs, nor did it provide the kind of clear notice of a specific risk required by Title IX." *Summary Judgment Order*, p. 13 - 14.

The plaintiffs argue that there is a disputed issue of material fact concerning this aspect of the notice issue. I disagree. In examining this question, I viewed the evidence in the record in the light most favorable to the plaintiffs, as I must. There is little, if any, dispute about the content of the discussion had at the February, 1998, meeting. In my Summary Judgment Order, I adopted the conclusion that Barnett was notified of the content of this discussion when he became CU's head coach. *Summary Judgment Order*, pp. 14 - 15. Taking these facts as true, I concluded that the February, 1998, meeting was not, *per se*, sufficient to provide notice of the relevant risk to CU. Based on the law discussed in my Summary Judgment Order, I find that this conclusion is not in error.

Third, the plaintiffs argue that my findings regarding CU's knowledge of the harassment of Katharine Hnida are contradicted by the evidence. This argument is based on the two affidavits submitted by Dr. Hnida, which are described in Section II, D, above. Again, Dr. Hnida's second affidavit cannot properly be considered as new evidence under Rules 59(e) and 60(b). Even if this affidavit properly could be considered as new evidence, Dr. Hnida's report of sexual harassment to relevant CU officials does not, by itself or in combination with the other evidence of notice, demonstrate that relevant CU officials were on notice of a risk relevant to the plaintiffs' Title IX claim.

Fourth, the plaintiffs argue that ranking CU police officers were aware of a sexual assault perpetrated by a CU football player in October, 2001. *Motion to Alter or Amend*, p. 9. The same player later was involved in the harassment of the plaintiffs in December, 2001. The plaintiffs argue that knowledge of the October, 2001, assault "by

13

the CU Police was knowledge by those with requisite control because CU Police had the authority to stop misconduct in football and recruiting." *Id.* The plaintiffs do not cite any evidence for this proposition, and I do not know of any basis to conclude that CU Police could control the policies of the football program, including its recruiting program. Evidence that ranking CU Police officers were aware of this assault does not establish notice for the purpose of the plaintiffs' Title IX claim.

I conclude that the plaintiffs have not demonstrated that my Summary Judgment Order contains clear error. Therefore, the plaintiffs are not entitled to relief from judgment based on clear error.

## IV.  DISCOVERY MISCONDUCT

The plaintiffs argue that my Summary Judgment Order should be withdrawn, and that discovery should be reopened, because CU and its counsel substantially interfered with the plaintiffs' ability to fully and fairly defend against summary judgment and prepare for trial. Again, Rule 60(b)(3) permits a party to obtain relief from judgment based on the misconduct of an adverse party. Such relief may be granted when a party demonstrates with clear and convincing evidence that the opposing party took actions with "an intent to deceive or defraud the court by means of a deliberately planned and carefully executed scheme." **Yapp v. Excel Corp.**, 186 F.3d 1222, 1231 (10th Cir. 1999).

The plaintiffs argue that CU prevented the plaintiffs from obtaining complete information about the harassment and assault of Trainer B on November 23, 2001, and CU's knowledge of and deliberate indifference to that harassment and assault. Again, Magistrate Judge Shaffer ordered CU to produce certain documents after the plaintiffs

14

moved to compel production of various documents by CU.  Magistrate Judge Shaffer also said he was "troubled by the University's apparent lack of candor" concerning some of its discovery responses.  *Order* [#758], filed July 1, 2005, pp. 43, 59, 62.  The plaintiffs claim that their inability to obtain this information in a timely fashion hobbled their ability to respond fully to CU's motion for summary judgment.  The plaintiffs' basis for seeking relief under Rule 60(b)(3) is discussed further in their supplement [#870] to their joint reply to defendant's response to the court's July 1, 2005, show cause order, which was filed on October 6, 2005.  As discussed above, the plaintiffs claim that the information produced in response to Magistrate Judge Shaffer's orders demonstrates that relevant CU officials had knowledge of the relevant risk prior to December 7, 2001.  For the reasons discussed above, I disagree with this contention.

      Having reviewed Magistrate Judge Shaffer's orders, the evidence produced in response to those orders, and the parties' arguments concerning the propriety of relief under Rule 60(b)(3), I conclude that such relief is not merited in this case.  I take seriously Magistrate Judge Shaffer's statement that he is troubled by the lack of candor exhibited by the University and its counsel in the context of certain discovery issues.  This conclusion and the factual scenario outlined in the plaintiffs' supplement [#870], however, do not establish by clear and convincing evidence that CU acted with an intent to deceive or defraud the court by means of a deliberately planned and carefully executed scheme.  Further, after a careful review of the evidence that CU withheld, I conclude that this evidence does not establish a Title IX claim where one previously had not been established.  Finally, I conclude that the late produced evidence does not indicate that further discovery might permit the plaintiffs to marshal a defense to the

motion for summary judgment when they previously have been unsuccessful in that effort. Considering all of these circumstances, withdrawing the judgment and re-opening discovery based on CU's discovery misconduct is not warranted.

## V. COSTS

Consistent with FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1, costs were taxed by the Clerk of the Court after the Summary Judgment Order was entered. The clerk awarded costs of $24,682.69 to the defendant. *Bill of Costs* [#741], filed May 27, 2005. In its motion for review of the bill of costs award, the defendant seeks an award of additional costs totaling $92,399.98. The defendant argues that these additional costs should be taxed because they were incurred reasonably and necessarily in preparing this case for trial. An award of costs must be based on a finding that the costs were both necessary to the preparation of the case and reasonable in amount. ***Callicrate v. Farmland Indust., Inc.***, 139 F.3d 1336, 1339 (10th Cir. 1998).

I have reviewed the parties' arguments concerning the propriety of the costs awarded by the clerk, the clerk's calculations related to the award of costs, and the relevant law. In addition, I have considered the history of this litigation, which is well known to me. Having considered all of that information, I conclude that the amount of costs taxed by the clerk is fair, accurate, and appropriate.

As noted above, the plaintiffs argue in their Motion to Alter or Amend that the award of costs against the plaintiffs should be vacated as manifestly unjust. They argue that CU has not been completely exonerated by the court's dismissal of this case, particularly with respect to CU's conduct in discovery. *Motion to Alter or Amend*, p. 9. My discretion to excuse or reduce an award of costs against a non-prevailing

party is limited in two ways.  First, Rule 54(d) creates a presumption that costs will be awarded to the prevailing party.  ***Cantrell v. Int'l Brotherhood of Elec. Workers***, 69 F.3d 456, 458 - 59 (10th Cir. 1995).  Second, a district court must state a valid reason for not awarding costs to the prevailing party.  ***Id.***  "(T)he denial of costs is in the nature of a penalty."  ***Serna v. Manzano***, 616 F.2d 1165, 1167 (10th Cir. 1980).  If costs are to be denied, "there must be some apparent reason to penalize the prevailing party. . ."  ***Klein v. Grynberg***, 44 F.3d 1497, 1507 (10th Cir. 1995); ***see also Aerotech, Inc. v. Estes***, 110 F.3d 1523, 1526 - 27 (10th Cir. 1997).

CU is the prevailing party in this litigation, and thus is the beneficiary of the presumption that it will be awarded costs.  Having considered the relevant law and the history of this litigation, I conclude that there is no apparent reason to penalize CU by reducing the costs awarded to CU, as taxed by the Clerk of the Court on May 27, 2005.

## VI.  CONCLUSION AND ORDERS

There is much about the incidents evidenced in the record of this case that cries out for justice.  There is no doubt that some of the harassment, abuse, and assaults reflected in the record are shameful at best, and criminal at worst.  A cry for justice, however, does not mean that Title IX should be expanded to provide justice simply because the cry for justice has not been answered otherwise.  Having considered the evidence and the parties' arguments, I conclude that the plaintiffs have not established that Title IX properly can provide them with the justice they seek.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Plaintiffs' Motion to Alter or Amend Judgment or for Relief from Judgment** [#687 (redacted) & #688 (sealed)], filed April 14, 2005, is **DENIED**;

17

2.  That the **Defendant's Motion for Review of Bill of Costs Award** [#743], filed June 6, 2005, is **DENIED**; and

3.  That the **Plaintiffs' Motion to Stay Determination of the Plaintiffs' Motion to Amend or Alter Judgment or for Relief From Judgment Until After Defendant's Compliance with the July 1, 2005 Memorandum Order Regarding Plaintiffs' Joint Motion for Sanctions and Plaintiffs' Joint Motion to Compel** [#760], filed July 6, 2005, is **DENIED** as moot.

Dated March 23, 2006, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**