**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No.  02-cv-2390-REB-CBS (consolidated with 03-cv-2495-REB-CBS)

LISA SIMPSON, and
ANNE GILMORE,

    Plaintiffs,

v.

UNIVERSITY OF COLORADO, Boulder, through its Board,
THE REGENTS OF THE UNIVERSITY OF COLORADO, a body corporate,

    Defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT

**Blackburn, J**

This matter is before me on the following motions: 1) **Plaintiffs' Joint Motion for rule 60(b)(6) Relief or, Alternatively, Action for Equitable Relief From Judgment** [#963 (sealed) #965 (redacted)], filed March 29, 2007; and 2) plaintiffs' **Unopposed Motion for Leave to Submit DVD with Exhibit A to [965] Redacted Version of Plaintiffs' Joint Motion for Rule 60(b)(6) Relief or, Alternatively, Action for Equitable Relief** [#972], filed April 4, 2007.  The defendant has filed a response [#981] to the Rule 60(b) motion, and the plaintiffs have filed a reply [#982], both filed April 19, 2007.  The motion to submit DVD is granted.  The Rule 60(b) motion is denied.

## I.  BACKGROUND

On March 31, 2005, I entered an order [#669] granting the defendant, University of Colorado's, motion for summary judgment.  **Simpson v. University of Colorado**, 372 F. Supp.2d 1229 (D. Colo. 2005).  That order resolved the claims of both plaintiffs. Shortly before I entered my summary judgment order, the plaintiffs filed a motion for sanctions [#545] and a related motion to compel [#637].  Those motions were pending when I granted the defendant's motion for summary judgment.  In those motions, the plaintiffs claimed that CU had not fully complied with its discovery obligations in this case.  On July 1, 2005, Magistrate Judge Shaffer ordered CU to produce certain evidence to the plaintiffs [#758].  Based, *inter alia*, on this newly produced evidence, the plaintiffs filed a motion to alter or amend the judgment, or for relief from judgment [#687 (redacted) #688 (sealed)], filed April 14, 2005.  After a full round of briefing, including supplements filed by the plaintiffs, I entered an order [#952] denying the plaintiffs' motion to alter or amend.  The plaintiffs then filed a notice of appeal.

The plaintiffs' appeal is set for oral argument on May 7, 2007.  On March 29, 2007, the plaintiffs filed their current motion for relief from judgment.  On April 10, 2007, the Tenth Circuit issued an order denying the plaintiffs' motion for a limited remand to permit this court to resolve the issues raised in the plaintiffs' motion for relief from judgment.  That order is docketed in this case as [#975], filed April 11, 2007.  The Tenth Circuit's order directs me to determine if I am "inclined to grant appellants' motion under FED. R. CIV. P. 60(b)."  **Simpson v. University of Colorado**, No. 06-1184, slip op. at 1 (10th Cir. April 10, 2007).  Under Tenth Circuit law, I may either indicate my intent to grant the motion, or I may deny the motion without a remand from

2

the Tenth Circuit. ***Garcia v. Regents of the Univ. of California***, 737 F.2d 889, 890 (10th Cir. 1984).

One of the key issues discussed in my summary judgment order was the issue of notice. To establish a Title IX claim, the plaintiffs must prove, *inter alia*:

> 1. that the University had actual knowledge of sexual harassment of female CU students by football players and recruits as a part of the football recruiting program; and

> 2. that the University was deliberately indifferent to this known sexual harassment of female CU students by football players and recruits as a part of the football recruiting program.

***Simpson v. University of Colorado***, 372 F. Supp.2d 1229, 1234 (D. Colo. 2005). In my summary judgment order, I concluded that the evidence in the record, when viewed in the light most favorable to the plaintiffs, did not demonstrate that relevant university officials had actual knowledge of a severe and pervasive risk of sexual harassment of female CU students by football players and recruits as part of the football recruiting program.

> Considered as a whole, however, all of the relevant information known to the CU officials did not constitute adequate notice, under Title IX, that female CU students, including the plaintiffs, faced a risk that CU football players and recruits would sexually assault female University students as part of the recruiting program, including the risk that those assaults would be aided or exacerbated by excessive alcohol use by players, recruits, and female students.

***Simpson***, 372 F. Supp.2d at 1242.

One of the key CU officials discussed in my summary judgment order was former CU football coach Gary Barnett. Barnett's knowledge of prior incidents of sexual harassment and sexual assault involving CU football players and recruits is relevant to the issue of notice. In their present motion, the plaintiffs claim that Barnett withheld

3

highly material evidence that is relevant to the key issue of notice. The plaintiffs say they recently discovered new evidence that shows that Barnett withheld this highly material evidence. Based on this contention, the plaintiffs seek relief from the court's summary judgment order. I will outline briefly the factual basis for the plaintiffs' motion.

In a deposition on September 23, 2003, Barnett was asked about a certain incident of domestic violence involving a CU football player. *Motion for relief from judgment*, Exhibit G, p. 123. Barnett was asked then if there were any other incidents of sexual harassment or sexual assault reported to him from the time he arrived at CU in 1999, until the alleged assaults that form the basis of this lawsuit. *Id.* Barnett said he did not recall any such incidents being reported to him, although he noted one additional incident in the Amendment Sheet for that deposition. *Id.*, p. 123 & Amendment Sheet. Barnett was asked then about sexual harassment allegations by a female football player. *Id.* He said that prior to December 7, 2001, only one name-calling incident involving the female player and one male player was known to him. *Id.*

Barnett was deposed again on April 16, 2004. In that deposition, Barnett was asked again if he knew of any allegation of sexual assault, sexual attack, or sexual molestation against any CU football player, other than the names and incidents he had disclosed previously . *Id.*, p. 335. The relevant time period was limited to the time after Barnett's arrival at CU in 1999. *Id.* Barnett said he was not aware of any other incidents of sexual molestation, assault, or harassment that were reported to him. *Id.*

The plaintiffs say they recently discovered evidence indicating that in January of 2001, Barnett knew that law enforcement authorities were investigating a charge of sexual assault against a CU player. Barnett did not reveal any knowledge of this

incident in his deposition testimony. On March 5, 2007, television station KUSA made public an interview with a former CU football player, Clyde Surrell. *Motion for relief from judgment*, Exhibit A (transcript of interview). Surrell played his first season with the CU football team in the fall of 2000. Surrell said in the interview that in January of 2001, shortly after his first season as a CU football player had ended, he learned that authorities were investigating an allegation of sexual assault against him. *Id.*, pp. 5, 8. The allegation was based on an incident that occurred in June of 2000. In June of 2000, Surrell had just completed high school. The alleged victim of the assault was a fellow student at Surrell's high school.

Surrell said a CU coach approached him in January of 2001, at the end of a track team practice. *Id.*, p. 8. Surrell says the coach told him that a detective had called asking to see Surrell because there was a girl who claimed Surrell had raped her. *Id.* It appears that the coach who approached Surrell was a track coach, although that is not clear. *Id.* Surrell says that Barnett knew about the allegation because he knows "that they called Barnett." *Id.*, p. 9. The interview does not make clear to whom Surrell was referring when he used the word "they." *Id.* The plaintiffs read Surrell's statement to indicate that Barnett was called by a detective who was involved in the investigation of Surrell. *Motion to alter or amend judgment*, p. 2. At the time, the investigation was being conducted by the Aurora, Colorado police. The plaintiffs say that Surrell's recent statement that Barnett knew about the sexual assault allegation against Surrell amounts to a recantation of portions of Surrell's previous deposition testimony in this case. *Motion for relief from judgment, pp. 1 - 2.* More importantly,

5

Surrell's statement that Barnett knew about the sexual assault allegation is contrary to Barnett's previous testimony, outlined above.

The police records submitted by the plaintiffs indicate that an investigation of the sexual assault allegation against Surrell was ongoing from June of 2000, through February of 2001. *Motion for relief from judgment*, Exhibit J. On February 5, 2001, the alleged victim was told that the district attorney would file charges against Surrell. *Id.*, Exhibit J, part 2, p. 4. On February 15, 2001, the alleged victim told police that she had decided not to pursue the case. *Id.* No charges were filed against Surrell in 2001. Surrell's statement does not indicate that Barnett was aware of these decisions by the district attorney and the alleged victim. After the time period relevant to this case, the alleged victim has sought to have the case reopened and prosecuted.

The plaintiffs rely also on a statement made by Surrell during the interview concerning what Barnett and other CU football coaches knew allegedly about alcohol use and sex at parties attended by CU football recruiting hosts and CU football recruits.

> I'm sure they knew what was going on, because a lot of 'em were ex college athletes, um, NFL athletes – they know what goes on. They didn't ever ask me. Um, maybe they asked some of the other guys, but they never . . .I was never – I can't really remember them comin' to me and sayin', hey, uh, what'd you guys do last night, or, did you get him laid? No, that was never, that was never brought up, or that was never said, you know.

*Motion for relief from judgment*, Exhibit A, p. 16. The plaintiffs argue that this is additional new evidence of Barnett's knowledge of the use of alcohol and sex in the CU football recruiting program.

Finally, it is important to note that Surrell was a recruiting host who was present at the party held in the apartment of plaintiff, Lisa Simpson, on the evening of

6

December 7, 2001.  The plaintiffs never have claimed that Surrell participated directly in the alleged sexual assaults that took place that evening, and the evidence indicates that Surrell left the party before the alleged assaults occurred.  However, the plaintiffs claim generally that Surrell and others worked to arrange for highly intoxicated females to be present at the party as part of their plan to arrange sex for recruits and players.

## II.  RULE 60(b)(6)

FED. R. CIV. P. 60(b)(2) & (3) provide for relief from judgment based on newly discovered evidence, or based on fraud, misrepresentation, or other misconduct. However, relief under these subsections is not available more than one year after the judgment or order in question was entered.  FED. R. CIV. P. 60(b).  More than one year has passed since I entered my summary judgment order.  The plaintiffs seek relief under FED. R. CIV. P. 60(b)(6), which is not subject to this time limitation.  Subsection six provides for relief from judgment based on "any other reason justifying relief from the operation of the judgment."  However, relief under rule 60(b)(6) may only be based on "reasons other than those enumerated in the previous five clauses."  ***U.S. v. Buck***, 281 F.3d 1336, 1341 (10th Cir. 2002).

I conclude that the plaintiffs may not seek relief under Rule 60(b)(6).  The plaintiffs seek relief from judgment based on their assertions 1) that Barnett withheld essential evidence during discovery; and 2) that Barnett's withholding of evidence did not become apparent until the interview of Surrell was made public on March 5, 2007. This basis for relief can be characterized as newly discovered evidence, misrepresentation, or fraud. Nothing in the plaintiffs' motion indicates that there is some other basis for the relief they seek.  Newly discovered evidence, misrepresentation, and

7

fraud are bases for relief enumerated in Rule 60(b)(2) and (3). The plaintiffs' request for relief is based on reasons enumerated in Rule 60(b)(2) and (3), and their request for relief may not be brought under Rule 60(b)(6).

### III. EQUITABLE RELIEF UNDER THE SAVINGS CLAUSE OF RULE 60(b)

Rule 60(b) provides two alternative avenues for relief, independent of the avenues defined in Rule 60(b)(1) through (6). *Buck*, 281 F.3d at 1341. Rule 60 "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding . . . or to set aside a judgment for fraud upon the court." FED. R. CIV. P. 60(b). This portion of Rule 60(b) often is referred to as its savings clause. Such relief may be sought more than one year after the judgment was entered. *Buck*, 281 F.3d at 1341 - 1342. The plaintiffs are not seeking relief based on fraud on the court. *Reply*, pp. 1 - 2. The plaintiffs' motion seeks relief as an independent action to relieve a party from a judgment.

An independent action for relief from judgment under Rule 60(b)'s savings clause is a "narrow avenue . . . available only to prevent a grave miscarriage of justice." *Id* at 1341. However, this avenue is "wide enough to allow at least some claims of fraud." *Id*. As with Rule 60(b)(6), the basis for an independent action under Rule 60(b)'s savings clause generally must be something other than the bases that may be asserted under Rule 60(b)(1) through (3). *U.S. v. Beggerly*, 524 U.S. 38, 46 (1998). Otherwise, "the strict 1-year time limit on such motions would be set at naught. Independent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res

8

judicata." *Id*. (quotation and citation omitted). "(A)n independent action should be available only to prevent a grave miscarriage of justice." *Id*., p. 47. In **Beggerly**, a party's "failure to furnish relevant information" and "make full disclosure to the Court" was found not to be a sufficient basis for relief in an independent action under Rule 60(b)(6). *Id*., pp. 1867 -1868.

Again, the plaintiffs argue that newly discovered evidence demonstrates that Barnett concealed key evidence when he was deposed in this case. Again, newly discovered evidence, misrepresentation, and fraud are bases for relief enumerated in Rule 60(b)(2) and (3), and these bases generally are not sufficient bases for relief under the independent action provision of Rule 60(b)'s savings clause.

### IV.  NEW EVIDENCE DOES NOT DEMONSTRATE ENTITLEMENT TO RELIEF UNDER RULE 60(b)

Even if the plaintiffs were able to seek relief under Rule 60(b)'s savings clause based on newly discovered evidence, fraud, or misrepresentation, I conclude that they still would not be entitled to relief from judgment. The new evidence cited by the plaintiffs likely is not admissible in its current form, and even if the evidence were admissible, the new evidence does not demonstrate the existence of a material issue of fact or a grave miscarriage of justice.

### A.  Admissibility

The primary piece of new evidence cited by the plaintiffs is Surrell's statement that Barnett knew, in January of 2001, of the rape allegation against Surrell. Surrell made this statement, and related statements, in an interview with KUSA television. The plaintiffs indicate that the Surrell interview was "streamed" on the KUSA website on

9

March 5, 2007. *Motion to submit DVD* [#972], filed April 4, 2007. The plaintiffs have provided a transcript of the interview. *Motion for relief from judgment*, Exhibit A.

Surrell's statements are out of court statements offered to prove the truth of the matter asserted in the statements. Under Fed. R. Evid. 801(c), the statements are hearsay. The plaintiffs claim that Surrell's statements in the KUSA interview are admissible because they fall within the hearsay exception for records of a regularly conducted business activity under Fed. R. Evid. 803(6). *Motion for relief from judgment*, p. 9 n. 3. To satisfy Rule 803(6), a document or record must 1) have been prepared in the normal course of business; 2) have been made at or near the time of the events it records; 3) be based on the personal knowledge of the entrant or of an informant who had a business duty to transmit the information to the entrant; and 4) not have involved sources, methods, or circumstances indicating a lack of trustworthiness. **U.S. v. Gwathney**, 465 F.3d 1133, 1140 -1141 (10th Cir. 2006).

The rationale behind the exception is that "such documents have a high degree of reliability because businesses have incentives to keep accurate records." **Timberlake Const. Co. v. U.S. Fidelity and Guar. Co.**, 71 F.3d 335, 341 -342 (10th Cir. 1995). "If any person in the process is not acting in the regular course of business, then an essential link in the trustworthiness chain fails." **Id**. (quotation and citation omitted). Nothing in the record indicates that Surrell was acting in the regular course of business, or that he had a business incentive to make an accurate statement, when he was interviewed by KUSA. Therefore, I conclude that Surrell's statements in the KUSA interview, as presented in the record, are not admissible under Fed. R. Evid. 803(6).

The plaintiffs argue also that Surrell's statements concerning the allegation that he committed sexual assault in June of 2000, are admissible as statements against interest. Fed. R. Evid. 804(b)(3). Even if Surrell's statements do constitute statements against interest, a proposition which I find to be highly doubtful, they still are not admissible on the current record. Rule 804 requires a showing that the declarant, Surrell, is unavailable to testify. The current record contains no such showing.

Surrell's statement that Barnett and other coaches must have known about the use of alcohol and sex at recruiting parties also is not admissible to prove Barnett's knowledge. Surrell's statement demonstrates that his suppositions about what the coaches knew are not based on Surrell's personal knowledge. Fed. R. Evid. 602. Surrell indicates clearly that he never discussed these topics with any of the coaches. *Motion for relief from judgment*, Exhibit A, p. 16. Instead, he assumes that the coaches knew what was going on because they were ex-college and NFL athletes. *Id.* This is an assumption based on stereotype, rather than evidence of Surrell's personal knowledge of what the coaches knew.

Assuming relief might be available to the plaintiffs under Rule 60(b), the plaintiffs have not come forward with admissible evidence that demonstrates an entitlement to such relief. This is an independent basis for the denial of the motion.

### B. New Evidence Does Not Demonstrate Entitlement to 60(b) Relief

It is conceivable, of course, that Surrell might repeat his statements in a deposition or at a hearing or trial. In that context, his statements about Barnett's knowledge of the investigation of a sexual assault allegation against Surrell may be admissible. Assuming that admissible evidence of Surrell's statements might be

11

obtained, I will analyze the effect such evidence would have on a properly postured motion for relief from judgment. As this motion is postured, the plaintiffs must demonstrate that in light of the new evidence, failure to grant relief from judgment will work a grave miscarriage of justice. **U.S. v. Beggerly**, 524 U.S. 38, 46 (1998). In the context of a summary judgment order, a timely and otherwise proper motion under Rule 60(b)(2) and (3) requires a showing that the newly discovered evidence or newly corrected misrepresentation would create a genuine issue of material fact when one did not exist previously. **Aldrich Enterprises, Inc. v. U.S.**, 938 F.2d 1134, 1144 (10th Cir. 1991).

I conclude that the plaintiffs' newly discovered evidence does not satisfy either standard. I analyze the new evidence under the more lenient standard applicable under FED. R. CIV. P. 60(b)(2) & (3), and I conclude that the new evidence does not demonstrate the existence of a genuine issue of material fact. Of course, if the new evidence does not demonstrate the existence of a genuine issue of material fact, then, *a fortiori*, it does not demonstrate a grave miscarriage of justice.

For the purpose of this analysis, I will not address Surrell's speculation about what Barnett and other CU football coaches must have known about the use of alcohol and sex at CU football recruiting parties. Even if Surrell testified in court and repeated his statement about what Barnett and other coaches must have known, that statement still would not be admissible. Again, the statement itself demonstrates that Surrell's description of what the coaches knew is based on Surrell's supposition, and not on Surrell's personal knowledge about what the coaches knew. Fed. R. Evid. 602.

In my summary judgment order, I outlined the relevant authority from the United States Supreme Court and the Tenth Circuit concerning liability under Title IX generally, and Title IX liability involving a claim that an educational institution is liable for harm caused by a group of harassers. ***Simpson v. University of Colorado***, 372 F. Supp.2d 1229, 1233 - 1237 (D. Colo. 2005). I concluded that the applicable Title IX precedent emphasized that Title IX liability is closely circumscribed, and that the risk at issue must be well-defined and focused to support a claim of Title IX liability. ***Id***., at 1236 (citing ***Davis as Next Friend LaShonda D. v. Monroe County Bd. of Educ.***, 526 U.S. 629 (1999); ***Bryant v. Independent School Dist. No. I-38 of Garvin County, OK***, 334 F.3d 928 (10th Cir.2003)). In the context of a Title IX claim based on sexual harassment, the risk of harassment must be severe and pervasive. ***Davis***, 526 U.S. at 675. Applying the relevant authorities, I concluded that the risk at issue in this case is

> the risk that football players and recruits would sexually assault female University students as part of the recruiting program, including the risk that those assaults would be aided or exacerbated by excessive alcohol use by players, recruits, and female students.

***Simpson***, 372 F. Supp. 2d at 1237.

I then analyzed the evidence in the record, which, according to the plaintiffs, demonstrated that relevant CU officials were aware of the relevant risk. ***Id***., pp. 1237 - 1240. I found that the evidence, viewed in the light most favorable to the plaintiffs, showed that relevant CU officials, including Barnett, knew of three relevant events: 1) a 1997 assault involving football players and recruits, and a 1998 meeting with the district attorney's office about that assault; 2) verbal harassment of Katherine Hnida, a female CU football player; and 3) a sexual assault of a female student trainer by a CU football player in October of 2001. ***Id***. at 1237 - 1241. After reviewing this evidence, I

13

concluded that knowledge of these events did not demonstrate that relevant CU officials were aware of the risk in question.

> Considered as a whole, however, all of the relevant information known to the CU officials did not constitute adequate notice, under Title IX, that female CU students, including the plaintiffs, faced a risk that CU football players and recruits would sexually assault female University students as part of the recruiting program, including the risk that those assaults would be aided or exacerbated by excessive alcohol use by players, recruits, and female students.

*Id*. at 1242.

For the purpose of the present motion, I assume that the plaintiffs' new evidence shows that in January of 2001, Barnett learned that police were investigating the sexual assault allegation against Surrell. Obviously, such an allegation may or may not be true, but such an allegation reasonably raises concern. At a minimum, the concern would be that if the allegation is true, then Surrell may present a risk of sexual assault. In this context, it is safe to assume that if the allegation against Surrell had ripened into formal criminal charges, then Barnett would have been aware of the criminal charges against one of his players. Conversely, if Barnett knew of the allegation and investigation concerning Surrell in January of 2001, then he must have known also that the allegation against Surrell never ripened into criminal charges against Surrell. In summary, assuming the plaintiffs' new evidence is true, Barnett knew that police were investigating an allegation of sexual assault against Surrell and that between January and December of 2001, the allegation never ripened into criminal charges.

The fact that the allegation never ripened into criminal charges, even though the allegation was investigated by police, greatly tempers the force of the allegation as a contributor to notice of a broader risk presented by football players and recruits

involved in the recruiting program.  By December of 2001, when the events at issue in this case occurred, the investigated but un-prosecuted allegation against Surrell presented, at most, a mildly suspicious circumstance concerning Surrell.

The key question is whether evidence of Barnett's knowledge of the allegation against Surrell, combined with his knowledge of the 1997 sexual assault, the verbal harassment of Katie Hnida, and the October 2001, sexual assault by a CU football player, considered together, would permit a reasonable fact finder to conclude that Barnett had adequate notice of the risk relevant to the plaintiffs' Title IX claim:

> the risk that football players and recruits would sexually assault female University students as part of the recruiting program, including the risk that those assaults would be aided or exacerbated by excessive alcohol use by players, recruits, and female students.

*Simpson*, 372 F. Supp. 2d at 1237.  I conclude that this evidence does not support such a conclusion.

To the extent the investigated but un-prosecuted allegation against Surrell reasonably can be seen to indicate that Surrell presented a risk of sexual assault, it is difficult logically to expand this discreet allegation to notice that other football players and recruits presented a risk of sexual assault against female CU students when they were involved in recruiting program activities.  Absent additional facts, such a stereotypical generalization is unwarranted.  The plaintiffs note that Surrell often was used as a host for football recruits, so any notice of a risk of sexual assault presented by Surrell was associated with the recruiting program.  This conclusion, however, does not logically cause a risk presented by Surrell specifically to cover participants in the recruiting program generally.

The plaintiffs claim also that Surrell and others worked to arrange for highly intoxicated females to be present at the December 7, 2001, party as part of their plan to arrange sex for recruits and players. Nothing in the record, however, demonstrates that Barnett or any other relevant CU official were aware that Surrell or others involved in the recruiting program had made or were likely to make such arrangements. The sexual assault allegation against Surrell cannot reasonably be read as notice to Barnett that Surrell also presented a risk that he and other participants in the recruiting program would work to arrange such events as part of the recruiting program.

Barnett's knowledge of the investigation of an alleged sexual assault charge against Surrell, without more, does not indicate a risk of severe and pervasive sexual harassment from the recruiting program. Barnett's knowledge could contribute to notice of the risk specified above only if this knowledge, combined with a constellation of other relevant incidents, tends to indicate the presence of a risk of severe and pervasive sexual harassment presented by the recruiting program. Considering the incidents apparently known to Barnett, as described in my summary judgment order, together with the Surrell allegation, I conclude that a reasonable fact finder could not conclude that knowledge of these incidents gave Barnett notice that the recruiting program presented a severe and pervasive risk that football players and recruits would sexually assault female University students as part of the recruiting program, including the risk that those assaults would be aided or exacerbated by excessive alcohol use by players, recruits, and female students.

The plaintiffs' new evidence does not demonstrate that there is a genuine issue of material fact on the Title IX notice issue. Given that conclusion, I conclude also that

16

the plaintiffs' new evidence does not demonstrate that they are entitled to relief from judgment under FED. R. CIV. P. 60(b) in order to prevent a grave miscarriage of justice.

## V.  CONCLUSION AND ORDER

Having re-considered this case in light of the plaintiffs' newly discovered evidence, I conclude that relief under FED. R. CIV. P. 60(b)(6) or under the savings clause of Rule 60(b) is not available, based on the plaintiffs' claims of newly discovered evidence, misrepresentation, or fraud.  I conclude further that if relief were available under Rule 60(b), the plaintiffs have not come forward with admissible evidence to substantiate their entitlement to such relief.  Finally, assuming the plaintiffs' new evidence is admissible, the plaintiffs' new evidence does not establish a basis for relief under Rule 60(b).

In my order denying the plaintiffs' previous motion to alter or amend judgment, I noted that there is much about the incidents evidenced in the record of this case that cries out for justice.  *Order Concerning Plaintiffs' Motion to Alter or Amend Judgment* [#952], filed March 23, 2006, p. 17.  I note again that a cry for justice "does not mean that Title IX should be expanded to provide justice simply because the cry for justice has not been answered otherwise."  *Id.*  Title IX cannot properly provide the plaintiffs with the justice they seek.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Plaintiffs' Joint Motion for rule 60(b)(6) Relief or, Alternatively, Action for Equitable Relief From Judgment** [#963 (sealed) #965 (redacted)], filed March 29, 2007, is **DENIED**; and

17

2. That the plaintiffs' **Unopposed Motion for Leave to Submit DVD with Exhibit A to [965] Redacted Version of Plaintiffs' Joint Motion for Rule 60(b)(6) Relief or, Alternatively, Action for Equitable Relief** [#972], filed April 4, 2007, is **GRANTED**.

Dated April 24, 2007, at Denver, Colorado.

                                    **BY THE COURT:**

                                    **s/ Robert E. Blackburn**
                                    **Robert E. Blackburn**
                                    **United States District Judge**